# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALFRED R. A. MAPP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-13-492-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Alfred Richard Addalin Mapp requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case is REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born November 26, 1960, and was fifty-one years old at the time of the administrative hearing (Tr. 37). He completed the eighth grade, and has past relevant work as a construction worker (Tr. 27, 162). The claimant alleges that he has been unable to work since November 30, 2008, because of back problems, right elbow pain, numbness in the left leg, and popping in his hips (Tr. 161).

## Procedural History

On December 3, 2010, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ Jennie L. McLean conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated February 22, 2013 (Tr. 19-28). The Appeals Council denied review, so the ALJ's opinion represents the final decision of the Commissioner for purposes of this appeal. See 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant retained the residual functional capacity (RFC) to perform light work as defined by 20 C.F.R. § 416.967(b), *i. e.*, he can lift/carry/push/pull ten pounds frequently and twenty pounds occasionally, and can stand and sit for six hours (Tr. 24). The ALJ concluded that although the claimant could not return to past relevant work, he was

nevertheless not disabled because there was other work that he could perform, *i. e.*, auction assistant, hand painter, and production assembler (Tr. 28).

## Review

The claimant contends that the ALJ erred: (i) by failing to discuss pertinent evidence related to his severe impairments and improperly evaluating an "other source" opinion, (ii) by improperly assessing his credibility, and (iii) by failing to include all his impairments in a hypothetical to the vocational expert. Because the Court finds that the ALJ *did fail* to properly evaluate evidence, the decision of the Commissioner must be reversed and the case remanded for further proceedings.

The ALJ determined that the claimant had the severe impairments of degenerative disc disease of the back, hypertension, and arthritis (Tr. 21). The medical evidence reveals that the claimant underwent a consultative examination with Dr. William Cooper, D.O., on February 25, 2011 (Tr. 207). Upon examination, Dr. Cooper noted that the claimant's lumbar-sacral spine had pain with decreased range of motion associated with tenderness to palpation bilateral and musculature tenseness, as well as marked decreased lumbar lordosis (Tr. 209). Straight leg raising reflex was negative bilaterally in both sitting and supine positions (Tr. 209). Dr. Cooper assessed the claimant with lumbar disc disease, bone spurs lumbar spine probably secondary to osteoarthritis, chronic lower back pain, chronic right elbow pain probably osteoarthritis, frequent parenthesis of the left lower possibly secondary to lumbar disc disease, irregularly irregular heart beat probably atrial fibulation, and elevated blood pressure probable hypertension but only has a single reading (Tr. 209-210).

On March 17, 2011, Dr. Janet Rodgers reviewed the medical evidence and found the claimant could perform light work (Tr. 216-222).

In 2011, the claimant complained of chest pain and/or hypertension on March 23, March 29, March 30, and April 18-20 (Tr. 224, 239, 241). On April 12, the claimant's nurse practitioner attempted to refer him to a cardiologist for a consultation, but the referral was declined because the claimant had no insurance and could not afford it (Tr. 241). X-rays of the lumbar spine and bilateral hips conducted on March 23, 2011, revealed degenerative changes of the lumbar spine and degenerative changes of both hips, including pelvic calcification (Tr. 245-246). On July 10, 2011, the claimant went to the emergency room with complaints of chest pain attributed to heat exhaustion after walking "7-8 miles" (Tr. 275-276). Further MRI of the claimant's lumbar spine, conducted on January 4, 2012, revealed prominent lumbar spondylosis, and combined developmental and acquired spinal canal stenosis of mild to moderate degree (20% at L1-2, 30% at L2-3, 50% at L3-4, and 50% at L4-5) (Tr. 256).

On October 11, 2012, nurse practitioner Una McElhany completed a physical RFC assessment for the claimant. She indicated that she had seen the claimant since March 23, 2011, and referred to the claimant's x-rays revealing degenerative disc disease and arthritis, as well as an EKG and the MRI (Tr. 288). She stated that his prognosis was guarded, because "Although he needs these meds he often is noncompliant due to lack of finances" (Tr. 288). She stated that depression and anxiety contributed to his physical problems, but that stress was not his primary issue; rather, his limitations were physical, although stress could increase his hypertension and therefore his dysrhythmia (Tr. 289).

In the sections asking for the claimant's ability to perform in a competitive work situation, she indicated that those answers were based on the claimant's own reports, including that he could sit/stand/walk less than two hours in an eight-hour workday, and that he needed to walk around during the workday every ten minutes for ten minutes at a time (Tr. 290).

In his written opinion at step two, the ALJ summarized Dr. Cooper's consultative examination, the state reviewing physician opinions, as well as a majority of the medical evidence. She concluded that the claimant's impairments did not meet or medically equal a Listing, then determined that the claimant could perform light work. At step four, the ALJ recounted the claimant's hearing testimony, determined the claimant was not credible, and stated she had considered all the opinions in the record. She gave great weight to the state reviewing physician opinions, and little weight to the opinion of Nurse McElhany, stating that she "appeared to depend upon the statements of the claimant rather than her examination and the objective evidence" (Tr. 26). She then found that the claimant was not disabled (Tr. 27-28).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment

relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

Here, the ALJ failed to even mention, much less discuss, the majority of the medical record at step four. Although she summarized much of the evidence at step two, she failed to even mention Dr. Cooper's opinion at step four. She gave great weight to the state reviewing physician opinions, which pre-dated much of the evidence in the record, including x-rays, an MRI, and the nurse practitioner's opinion. Indeed, most of the analysis at step four seemed an attempt to undermine the claimant's complaints related to his severe physical impairments, essentially calling into question the findings of severity at step two. What the ALJ should have done instead was provide an explanation as to how impairments found to be severe at step two became so insignificant as to require no corresponding limitations in the RFC at step four. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the

portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]; *Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.").

Furthermore, Social Security regulations provide for the proper consideration of "other source" opinions such as that provided by Ms. McElhany herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *1. *See also* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *6 ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related

to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p at *4-5; 20 C.F.R. § 404.1527(d). The ALJ made no reference whatever to these factors in connection with the evaluations by Nurse Practitioner McElhany, instead rejecting the entire report as reflecting the claimant's own reports, and ignoring that she differentiated where she provided her opinion and where she relied on the patient's own reports. It is therefore unclear whether she properly considered the requisite factors. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation."). Instead, the ALJ opted to reject her longitudinal opinion based on objective test results in favor of an opinion by a state agency physician who neither examined nor treated the claimant and whose opinion pre-dated much of the evidence in the record. *See, e. g., Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") *citing Vincent ex rel. Vincent v. Heckler*, 739 F.3d 1393, 1394-1395 (9th Cir. 1984).

Because the ALJ engaged in improper picking and choosing to discredit evidence that was inconsistent with her RFC determination, the Court cannot find that she performed the proper analysis. *See, e. g., Drapeau*, 255 F.3d at 1214 (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hamby*, 260 Fed. Appx. at 112 (noting that when determining a claimant's RFC, the ALJ "must 'consider all of the

claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less' and a failure to do so 'is reversible error.'") [unpublished opinion], *quoting Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is hereby REVERSED and the case REMANDED to the ALJ for further proceedings consistent herewith.

**DATED** this 17th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**